**No. 60598.**—Person & Weidhorn v. United States, protest 196823–K (New York).

Rao, Judge: An importation of so-called four-color prints in sheets was classified by the collector of customs at the port of New York as articles of surface-coated paper and assessed with duty at the rate of 5 cents per pound and 10 per centum ad valorem, pursuant to the provisions of paragraph 1405 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. It is here claimed that the prints are photographs, within the purview of paragraph 1410 of said act, as modified by said General Agreement on Tariffs and Trade, dutiable at the rate of 12½ per centum ad valorem.

The respective trade agreement provisions read as follows:

Paragraph 1405, as modified by T. D. 51802:

Papers with coated surface or surfaces, * * *

    *        *        *        *        *        *        *

Bags, printed matter other than lithographic, and all other articles, not specially provided for, which are dutiable under paragraph 1405, Tariff Act of 1930, by reason of being composed wholly or in chief value of any paper specified in that paragraph:

    *        *        *        *        *        *        *

    Bags and other articles_____ 5¢ per lb. and
10% ad val.

Paragraph 1410, as modified by T. D. 51802:

Drawings, engravings, photographs, etchings, maps, and charts:
    Containing additional text conveying historical, geographic, time-table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States_____ 6¼% ad val.
    Other_____ 12½% ad val.

At the trial of this action, counsel for the respective parties entered into the following stipulation, which was received in evidence as plaintiff's exhibit 1:

IT IS STIPULATED AND AGREED by and between respective counsel hereto that the imported merchandise in the case at bar consists of four-color prints which are identical to and produced in the same manner as the merchandise the subject of protest in the cases of *United States* v. *Rudolph Lesch*, 18 C. C. P. A. (Customs) 211, T. D. 44400, and *T. D. Downing Company* v. *United States*, 11 Cust. Ct. 57, C. D. 794, both of which records may be deemed to be incorporated as part of the record in the case at bar.

IT IS FURTHER STIPULATED that the merchandise herein is commonly and commercially known as "four-color prints"; that it is used in the manufacture of, and constitutes a part of box-tops, and that it was assessed for duty at 10 per centum ad valorem and 5 cents per pound under Paragraph 1405 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as articles in chief value of surface coated paper.

In making such four-color prints, the subject to be reproduced is set before a camera and an exposure made on a photographic film. From this exposed film a plate is produced by the photo-chemical process. This plate prints only in black. Then three successive photographs on films are taken of the original subject, and in each instance a filter is used—the individual filters exclude respectively everything except yellow rays, or blue rays, or red rays. Then from the three exposed photographic films three plates are made by the photo-chemical process. Each of these plates is capable of printing the photographed subject only in the color which has been admitted to the camera by the respective filter, i. e., yellow, or red, or blue colors. The four plates are then successively used on a printing press with printing ink; the first plate prints the yellow portion of the picture; the second plate prints the red portion; the third plate prints the blue portion; and the fourth plate prints the black portion on a coated sheet of paper. The

picture thus made reproduces the original photographed subject in all its combination of colors.

Samples of the importation are in evidence as plaintiff's exhibit 2 and plaintiff's illustrative exhibit 3, the latter being similar merchandise, not taken from the instant shipment. Each of said exhibits contains several individual floral prints on one sheet. In addition, there was received in evidence, as plaintiff's exhibit 4, a single floral print, produced by the same process as the subject merchandise, although not used for the same purpose. Concerning merchandise of the kind represented by plaintiff's exhibit 4, it was agreed that it was the practice of the collector, at the time of the instant entry, to classify same within paragraph 1410, as modified, *supra*, as photographs.

It was further stipulated that the merchandise at bar "is not a drawing, engraving, etching, map or chart."

As is evidenced by the agreed facts, four-color prints produced by the process therein outlined, were the subject of decision in each of the incorporated cases. In *United States* v. *Rudolph Lesch, supra*, paragraphs 1305 and 1530 of the Tariff Act of 1922 were involved. The collector had invoked the former provision to classify the articles as printed matter on surface-coated paper. Free entry, by virtue of said paragraph 1530, was claimed by the importer, alleging that said prints were "photographs" imported by an institution incorporated for the encouragement of the fine arts. Predicated upon a finding that the prints "were produced by the photochemical process, which is described at length under the caption 'Color Photograph,' in the New International Encyclopaedia, Vol. V, p. 623, and in the testimony," the trial court held the articles to be "photographs within the letter and spirit of paragraph 1530, particularly since the word is there used without limitation." (56 Treas. Dec. 667, T. D. 43749.)

Upon appeal, this view was sustained. Owing to its pertinency here, we quote at length from the appellate court's opinion:

After a careful study of the testimony and the several written articles on the subject of color photography, we conclude that the importation at bar is known as a 4-color print and was produced by the photochemical process; that is, the plates were made by the colored photography process which embraced both an etching and a photographic process and that the prints were made from the plates so produced.

As we understand it, ordinary photographs are printed from negatives or plates which are made by light exposures upon sensitized plates, the action of the light on the sensitized plate bringing about some kind of chemical action, and ordinarily a photograph is not the result of any etching process. In *McLaughlin & Freeman* v. *United States*, 18 C. C. P. A. (Customs) 128, T. D. 44094, where paragraph 1310 was under consideration, we defined a "photograph" as meaning "a picture or likeness obtained by photography."

It seems obvious that the word "etching" as used in paragraph 1530, having no limitations, is used in a broader sense than the word "etching" as used in paragraph 1704, where all etchings made by photochemical or other mechanical processes are excluded. The instant importation is made by photographic and etching processes. The fact that the color photograph at bar was made in part by etching, under these circumstances, should not exclude it from the paragraph.

We are impressed with the weight given by the court below to the language used in paragraph 1704 where Congress limited the words "etchings" and "engravings" to those only which are "etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes." It seems to us, as it evidently seemed to the court below, that if Congress had wished to exclude the product of color photography from the word "photograph" in the paragraph under consideration, it would have employed language similar to that used in paragraph 1704. We know of no good reason why Congress did not wish to include within the term

"photograph" or "etching," in paragraph 1530, the product of color photography, since the paragraph expressly provides that the product shall not be for sale and is for the encouragement of the fine arts, etc. We therefore believe that the word "photograph" is used in this paragraph in a broad sense and should be given, for the purposes of this paragraph, a meaning broad enough to include the merchandise at bar.

The principle of the *Lesch* decision was applied by this court in the incorporated case of *T. D. Downing Co.* v. *United States, supra*, wherein four-color prints (printed wraps) from A. Vivian Mansell & Co., Ltd., London, the same exporter as here, were held to be photographs provided for in paragraph 1410 of the Tariff Act of 1930. It is of interest to note the examiner's testimony in said case to the effect that, for a period of 23 years, he had advisorily classified merchandise from the firm of A. Vivian Mansell & Co., Ltd., within paragraph 1410, following the decision in the *Lesch* case.

It is the contention of the Government here that this court, in the *Downing* case, *supra*, should not have followed the decision in the *Lesch* case, owing to a difference in purpose between the provisions of said paragraph 1530 (paragraph 1631 of the present law) and those of paragraph 1410. The argument is made that, inasmuch as said paragraph 1530 had for its aim the encouragement of the free fine arts, the word "photograph" therein contained properly merited a broad interpretation, but that no sound basis exists for applying a like broad interpretation for the word "photograph" appearing in said paragraph 1410.

The Government seeks to limit the construction of the word "photograph" in said paragraph 1410 to images produced on sensitized surfaces by the action of light or other form of radiant energy and urges that the merchandise at bar is the end result of a printing, rather than a photographic process, citing *McLaughlin & Freeman* v. *United States, supra*; *Benziger Bros.* v. *United States*, 52 Treas. Dec. 266, T. D. 42432; *United States* v. *Paramount Publix Corp.*, 22 C. C. P. A. (Customs) 452, T. D. 47453; and the dictionary definitions of the words "photograph" and "photography."

We are of opinion, however, that the Government's contentions overlook the significant fact that just as the word "photograph" in said paragraph 1530 was without limitation or modification, so the word "photograph" in paragraph 1410, *supra*, is an unrestricted designation. Accordingly, we are of opinion that the language of our appellate court to the effect that "if Congress had wished to exclude the product of color photography from the word 'photograph' in the paragraph under consideration, it would have employed language similar to that used in paragraph 1704," applied with equal force to both provisions, and dictates the same construction for each. If four-color prints produced by the photochemical process are photographs for the purposes of paragraph 1530 of the Tariff Act of 1922 (hence of paragraph 1631 of the present law), they are likewise photographs within paragraph 1410, as modified, *supra*.

Moreover, we are unable to perceive any basis for the collector's classification of the instant merchandise, as represented by plaintiff's exhibit 2, in paragraph 1405, *supra*, as articles of surface-coated paper, when concededly single prints, made by an identical process, are classified as photographs within paragraph 1410. Neither a variation in use nor the fact that more than one photograph is included within a single sheet would appear to warrant this different treatment.

In view of the foregoing considerations, we are of opinion that the instant merchandise consists of photographs, which are dutiable at the rate of 12½ per centum ad valorem, pursuant to the provisions of paragraph 1410, as modified, *supra*. The claim of the plaintiff to that effect is sustained.

Judgment will be entered accordingly.